IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ALAKE GBOHUNMI AND STEPHANIE KEENE,** *Plaintiffs,* <br><br> v. <br><br> **MOMENTUM ADVISORY COLLECTIVE,** *Defendant.* | Civil No. 24-1677 |

### MEMORANDUM

**Costello, J.**                                                                                    September 24, 2025

Plaintiffs Alake Gbohunmi and Stephanie Keene are former employees of Defendant Momentum Advisory Collective. They allege that Defendant discriminated against them based on their race and pregnancy status. Plaintiffs further allege that Defendant retaliated against them for complaining about the purported discrimination. Plaintiffs sued Defendant for racial discrimination and retaliation in violation of 42 U.S.C. § 1981. Plaintiff Keene also sued for pregnancy discrimination and retaliation in violation of the Pennsylvania Human Relations Act ("PHRC"). Defendant moved to dismiss Counts I, II and IV of Plaintiffs' Amended Complaint for failure to state a claim upon which relief may be granted. For the reasons that follow, the Court will grant in part and deny in part Defendant's motion.

**I.      BACKGROUND & PROCEDURAL HISTORY**

Both Plaintiffs allege that Defendant discriminated against them and other African American employees by treating them differently than similarly situated white employees, whom they allege "were treated with dignity, respect, and afforded accommodations." ECF No. 8 ¶ 21. They bring a claim for relief for disparate treatment under Section 1981 (Count I).

Plaintiff Keene alleges that, despite "consistently performing well" and receiving "glowing reviews," Defendant wrongfully placed her on a performance improvement plan after she informed her supervisor about her high-risk pregnancy and need for maternity leave. *Id.* ¶¶ 11-14. She opposed her placement on this plan by submitting a detailed response. *Id.* ¶ 12. Defendant's board subsequently met to discuss Keene's pregnancy. *Id.* ¶ 14. Shortly thereafter, Defendant offered Keene a severance package, constructively terminating her employment. *Id.* She brings claims for relief for retaliation under Section 1981 and the PHRA (Counts II and IV).

Plaintiff Gbohunmi alleges that she was hired by Defendant as "a token African American to manage out and terminate African American employees, including Keene." *Id.* ¶ 17. She alleges that she was subject to retaliation after reporting to her supervisors about the disparate treatment of Keene and other African American employees, including by being excluded from meetings, ignored over email, and coerced into "illegal and unethical tasks." *Id.* ¶¶ 18-20. Gbohunmi was terminated within weeks of lodging a formal complaint. *Id.* ¶ 20. She brings a claim for relief for retaliation under Section 1981 (Count II).

Defendant moved to dismiss Counts I, II, and IV for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). *See generally* ECF No. 9. Defendant argues that Plaintiffs fail to allege any non-conclusory facts to support an inference that Defendant discriminated or retaliated against them on the basis of race or pregnancy status. *Id.* at 8-10.

II.     **LEGAL STANDARD**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads facts sufficient to

support a "reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Facial plausibility demands "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Assessing plausibility under *Twombly* requires three steps. *See Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). First, the Court must "take note of the elements the plaintiff must plead to state a claim." *Id.* (alterations omitted) (quoting *Iqbal*, 556 U.S. at 675). Next, the Court must "identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). Finally, the Court must accept as true all "well-pleaded factual allegations," draw all reasonable inferences from those allegations, and "determine whether they plausibly give rise to an entitlement to relief." *Id.* (internal quotations and alterations omitted). "If the well-pleaded facts do nut nudge the 'claims across the line from conceivable to plausible,' the Court must dismiss the complaint." *Lynch v. Tasty Baking Co.*, No. CV 23–4445, 2024 WL 967842, at *2 (E.D. Pa. Mar. 6, 2024) (quoting *Twombly*, 550 U.S. at 570).

**III. DISCUSSION**

    **a. Count I – Racial Discrimination (42 U.S.C. § 1981)**

To establish a discrimination claim under Section 1981, a plaintiff must show (1) that she belongs to a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned at least one of the activities enumerated in Section 1981—e.g., the performance or termination of a contract. *Castleberry v. STI Grp.*, 863 F.3d 259, 266 (3d Cir. 2016). "A plaintiff may raise an inference of discrimination in various ways, including by alleging that similarly situated comparators were treated more favorably by their employer, similar racial discrimination against other employees, or direct evidence of racial animus such as

3

discriminatory statements . . . by supervisors." *Riley v. Borough of Eddystone*, No. CV 24-1835, 2024 WL 4137310, at *3 (E.D. Pa. Sept. 10, 2024) (citing *Golod v. Bank of Am. Corp.*, 403 F. App'x 669, 703 n.2 (3d Cir. 2010)).

                i.    Plaintiff Keene

Plaintiff Keene fails to allege sufficient non-conclusory facts to state a claim for racial discrimination under Section 1981. Most of Keene's factual claims relate to her treatment by Defendant in relation to her high-risk pregnancy. *See* ECF No. 8 ¶¶ 11-14 (alleging Keene "faced disparate treatment after announcing her high-risk pregnancy").

Several of Keene's allegations related to racial discrimination are too conclusory to be credited. *See Iqbal*, 556 U.S. at 679 (allegations that "are no more than conclusions" are "not entitled to the assumption of truth"). For instance, Keene's allegation that "Defendant intentionally discriminated against [her] by treating [her] differently from similarly situated non-African American employees" is no more than a legal conclusion. ECF No. 8 ¶ 23; *see also id.* ¶ 21 ("Plaintiffs assert that Defendant's actions were driven by racial discrimination.") (same).

Keene sets forth only three additional allegations related to race. None of them support an inference of intentional discrimination by Defendant. First, Keene alleges that around the time she was placed on a performance improvement plan, one of her direct reports, "another African American woman, resigned due to a hostile work environment created by" a shared supervisor. *Id.* ¶ 13. "[S]imilar racial discrimination against other employees" may raise an inference of intentional discrimination. *Riley*, 2024 WL 4137310, at *3. But Keene alleges no facts suggesting that she was subject to a similar hostile work environment because of her race (as opposed to her pregnancy status).

Second, Keene alleges that Defendant began recruiting her replacement while she was still employed, "demonstrating clear discriminatory and retaliatory motives based on her . . . race." ECF No. 8 ¶ 15. Replacement with a member outside of a plaintiff's protected class can be evidence of intentional discrimination. *See Lazard v. All Restore LLC*, No. CV 19-6040, 2021 WL 1175137, at *7 (E.D. Pa. Mar. 29, 2021) (citing *Johnson v. Keebler-Sunshine Biscuits, Inc.*, 214 F. App'x 239, 242 (3d Cir. 2007)). But Keene does not allege that she was replaced with a non-African American individual. *See* ECF No. 8. Even if she had, a conclusory assertion of replacement by an employee outside of a protected class alone is typically insufficient to support an inference of intentional discrimination at the pleading stage. *See Riley*, 2024 WL 4137310, at *3 (collecting cases).

Third, Keene alleges that Defendant's treatment of her "was starkly different from" its treatment of her "non-Black colleagues, who were treated with dignity, respect, and afforded accommodations[.]" ECF No. 8. ¶ 21. A plaintiff in an employment discrimination case is "not required to identify any comparators who have received more favorable treatment" at the pleading stage. *Robinson v. Am. Reading Co.*, No. CV 24-5608, 2025 WL 1243058, at *4 (E.D. Pa. Apr. 29, 2025) (internal quotations omitted). But there must be *some* facts alleged which "raise a reasonable expectation that discovery will reveal evidence of comparators or other circumstantial evidence showing a causal nexus between a plaintiff's membership in a protected class" and the defendant's conduct. *Id.* at *5 (granting motion to dismiss for failure to state a disparate treatment claim). Keene does not marshal any such facts. She does not allege any specific instance where a "similarly situated colleague . . . was treated more favorably under similar circumstances." *Id.* All she alleges is that her non-Black colleagues "were treated with dignity, respect, and afforded accommodations," but she does not allege that these colleagues

5

were similarly situated or give any other information that could support an inference of intentional discrimination.  ECF No. 8 ¶ 21.

Courts in this Circuit have dismissed claims based on similarly sparse allegations of disparate treatment.  *In Shopshire v. Wheeler*, the Third Circuit affirmed a dismissal of a Section 1981 claim where the plaintiff's only allegation of disparate treatment was that defendants "held him to a hypercritical standard not applied to white workers, treating white workers better and holding them to a lesser standard."  858 Fed. App'x 580, 582 (3d Cir. 2021) (internal quotations omitted).  The court concluded this statement was "too threadbare and speculative to constitute a well-pleaded factual allegation."  *Id*.  Compare to another recent case in the Eastern District denying a motion to dismiss, *Sharpe v. Primex Garden Ctr.*, No. CV 23-4843, 2024 WL 3161755 (E.D. Pa. June 25, 2024).  There, the plaintiff alleged "both similar racial discrimination" against a former employee "and multiple statements by his supervisors" containing racially charged language.  *Sharpe*, 2024 WL 3161755, at *5.  Plaintiff Keene's allegations of disparate treatment more closely resemble those by the plaintiff in *Shopshire* and cannot be considered well-pleaded facts.  *See Shopshire*, 858 Fed. App'x at 582; *see also Connelly*, 809 F.3d at 790 ("Perhaps some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual") (internal quotations omitted).

Even construing the Amended Complaint in the light most favorable to Keene, these threadbare allegations do not nudge her racial discrimination claim over the line from "'conceivable to plausible.'" *Lynch*, 2024 WL 967842, at *2 (quoting *Twombly*, 550 U.S. at 570).  Accordingly, the Court will dismiss Count I as to Plaintiff Keene.

ii. Plaintiff Gbohunmi

Plaintiff Gbohunmi also fails to state a claim for disparate treatment under Section 1981. Gbohunmi asserts the same conclusory allegations as Keene. *See* ECF No. 8 ¶ 23 ("Defendant's actions, including the wrongful termination of Ms. Keene" were "motivated by race"); *id.* ("Defendant intentionally discriminated against Plaintiffs by treating them differently from similarly situated non-African American employees"); *id.* ¶ 21 ("Plaintiffs assert that Defendant's actions were driven by racial discrimination."). The Court will not afford these allegations the presumption of truth. *See Iqbal*, 556 U.S. at 679. The remaining non-conclusory allegations fail to support an inference of intentional discrimination by Defendant.

First, Gbohunmi alleges that Defendant hired her as the National VP of Operations, but she "quickly realized she had been hired as a token African American to manage out and terminate African American employees, including Keene." *Id.* ¶17. Gbohunmi presents this as a historical fact, but absent any information about why she had this "realization," this allegation more closely resembles an element of Gbohunmi's claim. Namely, that Defendant was motivated by race in hiring Gbohunmi and in the assignment of her job responsibilities. *See Connelly*, 809 F.3d at 789-90 ("*Twombly* and *Iqbal* expressly declined to exclude . . . allegations from a presumption of truth except to the extent they resembled a formulaic recitation of the elements of a claim") (internal quotations and alterations omitted).

Next, Gbohunmi alleges that she was "assigned tasks typically handled by HR professionals, which she recommended outsourcing, but Defendant refused." ECF No. 8 ¶ 18. The implication is that Defendant assigned her tasks not fit for her qualifications or role because of her race. The Third Circuit has credited allegations that a defendant "deviated from its own past hiring norms and work assignments" in finding a plaintiff stated a claim for disparate

7

treatment under Section 1981. *See Connelly*, 809 F.3d at 791. But in those cases, the plaintiffs pleaded specific facts explaining the employer's typical practices and how their treatment deviated from members outside of the protected class. *See, e.g., id.* (female truck driver alleging that defendant employer failed to retain her despite her being more senior and qualified, based on defendant's own standards, than her male counterparts who were retained). In comparison, Gbohunmi does not make any such allegations—e.g., that other operations executives outside of her protected class were not assigned similar tasks. *See generally* ECF No. 8.[1]

Construed in the light most favorable to Gbohunmi, these allegations are too threadbare and speculative to raise an inference that Defendant intentionally discriminated against her based on her race. The Court will dismiss Count I as to Plaintiff Gbohunmi.

### b. Count II – Retaliation (42 U.S.C. § 1981)

To establish a retaliation claim under Section 1981, a plaintiff must show (1) that she engaged in protected activity; (2) the employer took an adverse employment action against her; and (3) a causal connection between her participation in the protected activity and the adverse employment action. *Castleberry*, 863 F.3d at 267. To satisfy prong one, a plaintiff "need not prove the merits of the underlying discrimination complaint," but she must have "act[ed] under a good faith, reasonable belief that a violation existed" when she reported it. *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015). That belief must be "'objectively reasonable.'" *Id.* at 193-94 (quoting *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 322 (3d Cir. 2008)).

---

[1] Like Plaintiff Keene, Gbohunmi alleges that Defendant's treatment of her was "starkly different from that of their non-Black colleagues, who were treated with dignity, respect, and afforded accommodations" in support of her disparate treatment claim." ECF No. 8 ¶ 21. For the same reasons described above, *supra* at 5-6, this allegation is too threadbare to be afforded the presumption of truth.

i. Plaintiff Keene

The Amended Complaint includes only one allegation that Plaintiff Keene was retaliated against for participating in activity protected under Section 1981: "Defendant retaliated against both Plaintiffs after they engaged in protected activity by opposing racial discrimination." ECF No. 8 ¶ 25. This is a mere legal conclusion and cannot be credited by the Court. *See Iqbal*, 556 U.S. at 679. The Amended Complaint does not contain a single non-conclusory allegation that Keene ever complained to Defendant about disparate treatment based on her *race* rather than her *pregnancy*. *See* ECF No. 8 ¶ 11 ("Keene faced disparate treatment after announcing her high-risk pregnancy"); *id.* ¶ 12 (alleging Keene was placed on a performance improvement plan shortly after telling her supervisors about her pregnancy and requesting maternity leave); *id.* ¶ 14 ("Despite Keene's prior glowing reviews, her treatment became progressively worse as her pregnancy advanced. Defendant's board discussed Keene's pregnancy and soon after offered her a severance package."). Section 1981 only covers race-based discrimination, not pregnancy-based discrimination. *See* 42 U.S.C. § 1981(a) ("All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens"). Count II will thus be dismissed as to Plaintiff Keene.

ii. Plaintiff Gbohunmi

Setting aside her conclusory allegation that she was "wrongfully terminated after advocating for fair treatment of African American employees . . . in violation of [Section] 1981," ECF No. 8 ¶ 25, Plaintiff Gbohunmi fails to plead sufficient facts to support an inference that Defendant retaliated against her for reporting what she perceived as Defendant's disparate treatment of African American employees.

9

Although Gbohunmi need not prevail on her underlying discrimination claim to state a claim for retaliation, she must have had a good faith, objectively reasonable belief that she was opposing conduct that is unlawful under Section 1981.  *See Daniels*, 776 F.3d at 193-94.  Courts analyzing the "objectively reasonable" standard at the pleading stage have required at least some non-speculative, non-conclusory factual allegations to support a plaintiff's belief.  *See, e.g., Riley*, 2024 WL 4137310, at *4 (plaintiff failed to plead retaliation for reporting hostile work environment where he did not "allege facts that would make such a belief reasonable"); *Solkoff v. Penns. State Univ.*, No. CV 18-00683, 2018 WL 11544289, at *1 n. 1 (E.D. Pa. Dec. 11, 2018) ("Plaintiff has not pleaded sufficient facts that plausibly show he had an objectively reasonable, good faith belief that he [was] opposing unlawful conduct.  Instead, at best, the allegations are conclusory and unsupported.").

For instance, in *Riley v. Borough of Eddystone*, the court found a plaintiff's belief that he was reporting unlawful conduct to be objectively reasonable because he reported being called a racial slur by a coworker.  2024 WL 4844794, at *4; *see also Barnett v. Lowes Home Centers, LLC*, No. CV 18-2064, 2019 WL 1047496, at *8 (E.D. Pa. Mar. 5, 2019) (Plaintiff's belief that she complained about unlawful conduct was objectively reasonable because she reported about specific remarks made during "a racially-charged conversation").  The utterance of a racial slur by a coworker may not be enough to plead each element of a discrimination claim under Section 1981, but it provides some factual support for plaintiff's belief that he was reporting unlawful conduct—making that belief objectively reasonable.  *See Riley*, 2024 WL 4844794, at *4.

The same cannot be said here.  Gbohunmi may have "fervently believe[d]" that Defendant unlawfully discriminated against African American employees when she complained to her supervisors, but she has "failed to marshal or refer to any evidence" to support a

10

reasonable belief that Defendant engaged in any unlawful conduct under Section 1981. *See Sannoh v. Horizon House, Inc.*, No. CV 16-5233, 2017 WL 4167439, at *3 (E.D. Pa. Sept. 20, 2017) (dismissing retaliation claim where no evidence supported reasonable belief that Defendant's conduct was due to unlawful discrimination).

Each of Gbohunmi's allegations supporting her belief that she reported unlawful racial discrimination are deficient. Gbohunmi alleges that after she "observed the disparate treatment of Keene and other African American employees," she "verbally complained" to two of her supervisors, "pushing back against the mistreatment of Keene." ECF No. 8 ¶ 18. This is entirely conclusory and speculative. *See Solkoff*, 2018 WL 11544289, at *1 n.1 ("conclusory and unsupported allegations" insufficient to make belief objectively reasonable). So is Gbohunmi's allegation that Defendant "retaliated" against her and subjected her and other African American colleagues to "slander within the organization" after she formally lodged a complaint "addressing the unfair treatment and organizational sabotage she was experiencing." ECF No. 8 ¶ 20. Unlike the plaintiff in *Riley*, Gbohunmi does not point to any statements or actions by supervisors or other employees that would make her belief that Defendant was treating African American employees differently objectively reasonable. *See Riley*, 2024 WL 4844794, at *4. The Court will accordingly dismiss Count II as to Plaintiff Gbohunmi.

    c. **Count IV – Retaliation (43 P.S. §§ 951 – 963)**

To state a claim for pregnancy retaliation under the PHRA, a plaintiff must establish the same elements as retaliation under Title VII: (1) that she engaged in protected activity; (2) her employer took adverse action against her; and (3) there is a causal link between the protected activity and the adverse action. *Donnelly v. Capital Vision Servs., LLC*, 644 F. Supp. 3d 97, 110

(3d Cir. 2022). Because of these shared elements, courts review motions to dismiss PHRA claims similarly to motions to dismiss Title VII claims. *Id.* at 111.

Keene pleads sufficient facts to state a claim for retaliation under the PHRA. "Opposition to an unlawful employment practice, such as denying a benefit to someone because they were on maternity leave, is squarely a 'protected activity'" under the PHRA. *See Donnelly*, 644 F. Supp. 3d at 111. Keene alleges that, despite her "strong performance" and "prior glowing reviews," she was "unjustly placed on a Performance Improvement Plan" shortly after informing her supervisor of her pregnancy and need for maternity leave and "forced to provide a detailed rebuttal." *See* ECF No. 8 ¶¶ 12-14; *see also id.* ¶ 29 ("Ms. Keene engaged in protected activity by opposing the unwarranted PIP and disparate treatment she was subjected to because of her pregnancy.").

Keene's allegation that she was offered a severance package and constructively discharged after Defendant's board discussed her pregnancy is sufficient to support an inference of an adverse employment action. *See* ECF No. 8 ¶ 15; *Ellingsworth v. Hartford Fire Ins. Co.*, 247 F. Supp. 3d 546, 556 (E.D. Pa. 2017) ("A constructive discharge constitutes an adverse employment action for purposes of Title VII") (internal quotations omitted). The close temporal proximity between Keene's pregnancy announcement and request for leave, her opposition to her placement on a performance improvement plan, and constructive discharge are sufficient to infer the requisite causal connection. *See, e.g.*, *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 232 (3d Cir. 2007) ("Where the temporal proximity between the protected activity and the adverse action is unusually suggestive, it is sufficient standing alone to create an inference of causality") (internal quotations omitted). The Court will accordingly deny Defendant's motion to dismiss Count IV.

### d. Leave to Amend

Courts have broad discretion to grant leave to amend "when justice so requires." *See* Fed. R. Civ. P. 15(a)(2). The Federal Rules express "'a preference for liberally granting leave to amend' unless 'amendment would cause undue delay or prejudice, or that amendment would be futile.'" *Riley*, 2024 WL 4137310, at *6 (quoting *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000)). Defendant argues that amendment would be futile but does not explain why the defects in Plaintiffs' claims cannot be cured or why granting leave would otherwise cause delay or prejudice. *See* ECF No. 9 at 10 (arguing only that Plaintiffs already amended once and are represented by "a known employment firm"). Leave to amend is therefore appropriate here to permit Plaintiffs to include allegations curing the defects set forth above.[2]

## IV. CONCLUSION

Because Plaintiffs do not allege facts supporting a reasonable inference that Defendant discriminated or retaliated against them on the basis of race to state a claim for relief under Section 1981, the Court will dismiss Counts I and II of the Amended Complaint with leave to amend. Because Plaintiff Keene alleges sufficient facts to state a claim for relief for pregnancy retaliation under the PHRA, the Court will deny Defendant's motion as to Count IV. An appropriate Order will follow.

BY THE COURT:

_____
MARY KAY COSTELLO, J.

---

[2] If Plaintiffs do not cure these defects in their second amended complaint, the only remaining claims will arise under the PHRA and the Court will lose subject-matter jurisdiction. Thus, if Plaintiffs do not cure these defects the Court will dismiss this action with prejudice.